**Dennis RANDALL, Plaintiff and Appellant,**

v.

**VALLEY TITLE, et al., Defendants and Respondents.**

**No. 18639.**

Supreme Court of Utah.

April 17, 1984.

Thomas W. Seiler, Orem, for plaintiff and appellant.

Kevin Anderson, David W. Slaughter, George Hunt, Salt Lake City, for defendants and respondents.

OAKS, Justice:

This is a case of first impression on the duties of a trustee with respect to the excess proceeds of sale under our Act Relating to Trust Deeds, U.C.A., 1953, §§ 57-1-19 to -36. At issue is the meaning of the statute requiring the trustee to apply the proceeds of sale, after paying costs and satisfying the obligation secured by the trust deed, to "the person or persons legally entitled thereto." § 57-1-29.

The defendant, Valley Title Co., trustee under a second trust deed, sold the property under a power of sale on August 12, 1980. At that time the property, a residential lot in Provo, was subject to interests in the following order of priority, all in default:

1. A first trust deed to Deseret Federal for $100,000.

2. Mechanic's liens totalling approximately $43,000.

3. A second trust deed to MZ & C, Inc., for $6,952.

4. A third trust deed to Dennis Randall for $14,000.

MZ & C, which had caused the sale, initially bid the amount of its beneficial interest, $6,952. Randall, the plaintiff in this case, bid $17,800. MZ & C then raised its bid to $18,000, and purchased the property at that price, subject to the first trust deed and the mechanic's liens. Randall thereupon applied to the trustee for the excess of MZ & C's bid over the indebtedness satisfied ($11,048, being $18,000 minus $6,952). The trustee refused, explaining that there were no excess proceeds since the amount in excess of the indebtedness to MZ & C went for partial cancellation of the mechanic's

liens. Randall then sued the trustee and MZ & C for the excess.

MZ & C testified at trial that it had been authorized to act on behalf of the mechanic's lien claimants and to bid an amount sufficient to obtain title to the property so that the group could, sell it "without too much loss." The trustee's deed given to MZ & C recites that the conveyance is made "for the sum of $18,000 paid in cash, lawful money of the United States by satisfaction of the indebtedness then secured by said deed of trust." The record contains no evidence of payment (cash or otherwise) at the time of sale other than the $6,952 indebtedness secured by the MZ & C deed of trust. No mention was made of debt satisfaction pertaining to any mechanic's lien and no mechanic's lien was released at that time.

After the trustee's sale, Randall began to negotiate to buy the property from MZ & C. No mention was made in any of these negotiations of reducing the price to Randall in consideration of the fact that monies owed to him had been used to reduce senior liens against the property. Indeed, the final contract of sale from MZ & C to Randall shows the price as $143,000 (plus $6,369.81 Randall was to pay directly to Deseret Federal for overdue payments and fees), less $100,000 for assumption of the Deseret Federal mortgage. The balance of $43,000, which Randall was to pay, is explained as "Payoff to Lien Holders," whose liens are listed individually and total $43,-000. Randall recorded his deed to the property on September 30, 1980. Releases of all of the mechanic's liens were recorded on that same day.

The trial court found that the trustee sale was not conducted properly: payment was not made as § 57–1–28 requires, nor does the Act contain authority for treating release of senior interests as payment. In any event, the liens were not released at the time of the trustee sale. The court also found that the trustee was the only person liable for distribution of proceeds, *see*

§ 57–1–29—that MZ & C's only duty was to pay the amount the trustee demanded.[1] The district court further ruled that Randall, as the only party whose interest was extinguished by the sale, was entitled to the $11,048 excess proceeds from the sale. However, the court gave judgment against Randall for lack of proof that he had been damaged. Although Randall would clearly have been damaged if MZ & C kept the property or sold it to another party, the court concluded that because Randall purchased the property at a "reduction of the purchase price" he suffered no damage.

No one denies that Randall was entitled to the excess proceeds at the conclusion of the sale under trust deed. Although § 57–1–29 does not specifically mention junior trust deeds or lienholders, the surplus from the sale stands in the place of the foreclosed real estate and is subject to the same liens and interests that were attached to it. *Cf. Cowan v. Stoker*, 100 Utah 377, 115 P.2d 153 (1941). The question before us is whether a junior trust deed holder or lienor forfeits his right to those surplus proceeds by later purchasing the property at a price claimed to be reduced by the amount of the surplus proceeds. That issue turns on the purpose behind the statutory requirement that the surplus proceeds be given to the person legally entitled to them.

The legislature has provided that the beneficiary has the *option of foreclosing* a deed of trust either by power of sale or by judicial foreclosure. § 57–1–23. If MZ & C had elected judicial foreclosure, Randall and any other junior interests would have had a right of redemption upon paying MZ & C the amount of its purchase price plus 6 percent. Utah R.Civ.P. 69(f).

■ Since MZ & C elected to foreclose its deed of trust by trustee power of sale, Randall did not have a statutory right of redemption. § 57–1–28(2). Under power of sale, junior interests are protected by the requirement that the trustee distribute

---

[1]. Although § 57–1–28 requires the purchaser to pay the amount bid by him, it is clear from

§ 57–1–27 that the trustee is responsible to take action if the purchaser fails to pay that price.

any surplus proceeds to the person legally entitled thereto. Senior trust deed holders or lienholders may combine their interests to bid for the property at a trustee's sale, but only by following the statutory mandate that "[t]he purchaser at the sale shall forthwith pay the price bid ...." § 57-1-28(1). Senior interests cannot bid all or part of the amount of their interests (thus outbidding junior interests) and then fail to pay cash or discharge their claims to the extent of their bids. Otherwise, they could—as was apparently attempted here—use the sale under trust deed to strip junior interests of the essential protections they would enjoy under either method of foreclosure.

A trustee under trust deed may not ignore its statutory responsibilities in order to further the interests of some interest holders at the expense of others. MZ & C and the mechanic's lien claimants testified that they wanted title in order to secure the best subsequent sale for their interests. The trustee could assist them to achieve that end, but only within the limits specified in the statute, including the trustee's responsibility to collect the purchase price (in this case, $18,000) less the debt cancelled (in this case, $6,952) and pay the balance ($11,048) to the next interest legally entitled thereto (in this case, the indebtedness secured by Randall's trust deed).

The trustee claims that because Randall in fact chose to purchase the property from MZ & C, any damage he may have suffered from the trustee's refusal to pay him the excess bid at the trustee's sale was cancelled by the reduced price he paid MZ & C for the property. If the amount due Randall from the foreclosure sale had been credited to his benefit in his purchase from MZ & C, this argument might have merit. But absent formal notation of a reduction, there is no way to determine the price at which MZ & C would have sold the property to another buyer. Randall's statutory right to the surplus proceeds of the trustee sale might be satisfied by a price concession upon his purchase from the party who acquired it from the trustee, but not without Randall's knowledge or agreement that his statutory claim against the trustee was being satisfied in that manner. There is no evidence of such agreement in the record of this case. MZ & C's after-the-fact testimony of intent to benefit Randall by the terms of sale is unpersuasive. We therefore conclude that Randall was entitled to recover from the trustee the $11,048 excess proceeds, less the costs of the trustee's sale. Randall was not entitled to recover any sum from MZ & C, and as to that dismissal the district court's judgment is affirmed.

The judgment dismissing Randall's claim against the trustee is reversed, and the case is remanded for entry of judgment in favor of Randall as directed in this opinion.

No costs awarded.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.